UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ISABEL M. SCALICI, | Case No. 2:24-cv-00540-ART-EJY |
| Plaintiff, | ORDER |
| v. | |
| SMITH'S FOOD & DRUG CENTERS, INC. | |
| Defendant. | |

This is a removed action stemming from a slip and fall on April 7, 2022, at a Smith's Food & Drug Center in Las Vegas, Nevada. Plaintiff Isabel Scalici alleges negligence against Defendant Smith's Food & Drug Centers, based on theories of premises liability, respondeat superior, and negligent hiring, training, supervision, and entrustment. (ECF No. 1-1.) Ms. Scalici moves for partial summary judgment as to Smith's affirmative defenses, premises liability, and causation, past medical specials, past wage loss, and future medical specials. (ECF Nos. 16, 17, 18.) For the reasons set forth in this order, the Court denies Ms. Scalici's partial motions for summary judgment.

**I.    FACTS**

On April 7, 2022, Ms. Scalici was grocery shopping at the Smith's at 3160 N. Rainbow Boulevard in Las Vegas, Nevada. (ECF Nos. 1-1 at 4; 17 at 3.) As Ms. Scalici was walking through the produce section, she slipped and fell on droplets of water on the floor. (*Id.*)

There is some evidence suggesting that another patron shook wet produce in the area where the fall occurred about 8 minutes prior to the fall. (ECF No. 17 at 5.) Shortly after the patron shook some wet produce, Smith's Assistant Store Leader, Gilbert Huizar, walked through the area. (*Id.*) However, between Mr. Huizar exiting the area and Ms. Scalici falling, still photos from the surveillance

footage show a number of patrons with produce in their carts walking through the area. (ECF No. 24-2 at 11–17.) Some of these patrons appear to have produce in their cart. (*Id.*) Additionally, just before Ms. Scalici slipped, a woman standing next to her appears to put something from the produce rack into her cart. (*Id.* at 15–17.)

Following this accident, Ms. Scalici began medical treatment for her injuries in Las Vegas. (*See e.g.,* ECF Nos. 18-2 at 2; 18-5 at 2.) After moving to Florida in May 2022, Ms. Scalici continued medical treatment. (ECF No. 18-7 at 2–3.) She later consulted with Dr. Kevin Debiparshad of Synergy Spine & Orthopedics. Dr. Debiparshad initially recommended surgery for Ms. Scalici's lumbar spine, including a lumbar microdiscectomy. (ECF No. 18-1 at 2–3.) However, Dr. Debiparshad later changed his opinion, instead recommending transforaminal lumbar interbody fusion. (ECF No. 18-1 at 9.)

On December 22, 2023, Ms. Scalici filed the instant lawsuit against Smith's. (ECF No. 1-1.) Smith's subsequently removed this action to federal court, and Ms. Scalici moved for partial summary judgment. (ECF Nos. 16, 17, 18.) Smith's responded to the partial summary judgment motions (ECF Nos. 24, 25, 26), and Ms. Scalici replied. (ECF Nos. 27, 28, 29.)

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). The Court views the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

In contrast, when the nonmoving party bears the burden of proving a claim or defense, the moving party may satisfy its burden by either (1) producing evidence that negates an essential element of the non-moving party's claim or defense, or (2) showing that the nonmoving party lacks sufficient evidence to establish an essential element on which it will bear the burden of proof at trial. *See Celotex Corp.,* 477 U.S. at 323–24. If the moving party fails to meet this initial burden, the Court does not need to consider the nonmoving party's evidence and summary judgment must be denied. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

## III.    LIABILITY

Ms. Scalici first seeks partial summary judgment as to premises liability, contending that Smith's had both constructive notice of the spill and notice under a mode of operation theory, yet failed to remedy the spill. (ECF No. 17.) "In order to prevail on a traditional negligence theory, a plaintiff must establish that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered damages." *DeBoer v. Sr. Bridges of Sparks Fam. Hosp.*, 282 P.3d 727, 732 (Nev. 2012). "In order to establish entitlement to judgment as a matter of law, respondents must negate at least one of the [] elements of the plaintiff's case." *Perez v. Las Vegas Med. Ctr.*, 805 P.2d 589, 591 (Nev. 1991). In negligence actions, courts are generally reluctant to grant summary judgment. *Harrington v. Syufy Enterprises*, 931 P.2d 1378, 1380 (Nev. 1997).

"[W]hether a duty exists is actually a question of law." *Turner v. Mandalay Sports Ent., LLC*, 180 P.3d 1172, 1177 (Nev. 2008). "An owner of a business owes its patrons "a duty to keep the premises in a reasonably safe condition for use— the duty of ordinary care." *Asmussen v. New Golden Hotel Co.*, 392 P.2d 49, 49 (Nev. 1964). Accordingly, a business owner is only liable for accidents stemming from its own unreasonable—and therefore negligent—conduct, not for all accidents occurring on its premises. *See Sprague v. Lucky Stores*, 849 P.2d 320, 322–23 (Nev. 1993) ("The owner or occupant of property is not an insurer of the safety of a person on the premises, and in the absence of negligence, no liability lies.") (internal quotation marks and citations omitted).

"Where a foreign substance on the floor causes a patron to slip and fall, and the business owner or one of its agents caused the substance to be on the floor, liability will lie, as a foreign substance on the floor is usually not consistent with the standard of ordinary care." *Sprague*, 849 P.2d 320, 322 (Nev. 1993). But [w]here the foreign substance is the result of the actions of persons other than the business or its employees, liability will lie only if the business had actual or constructive notice of the condition and failed to remedy it." *Id.* at 322-23. Whether a property owner is under constructive notice of a hazardous condition is a question of fact for the jury to resolve. *Sprague*, 849 P.2d at 323; *see also Rios v. Wal-Mart, Inc.*, 740 Fed. Appx. 582, 583 (9th Cir. 2018) (citing *Sprague* and affirming that constructive notice is a question of fact for the jury); *Paul v. Imperial Palace, Inc.*, 908 P.2d 226, 230 (1995) (same).

Constructive notice can be proven with evidence of a virtually continual hazard. For example, in *Sprague*, the plaintiff had slipped and fallen in the produce section of defendant's supermarket. *Sprague*, 849 P.2d at 322. A half-smashed grape was found next to plaintiff's body immediately after the fall. *Id.* Plaintiff did not allege that defendant or its employees had caused the grape to be on the ground. *See id.* However, defendant's employees testified that the

produce section was "a virtually continual hazard" due to customers dropping food debris "all over the floor." *Id.* The court found that a reasonable juror could have determined that the virtually continual debris on the floor put the store on constructive notice that, at any time, a hazardous condition might exist which would result in an injury to customers. *Id.* at 323.

### A. Liability Analysis

Although Ms. Scalici has not put forth any evidence suggesting that a Smith's employee caused the water to be on the floor, there is a dispute of material fact as to whether Smith's had actual or constructive notice of the hazard.

Ms. Scalici argues that Smith's has conceded notice because Assistant Store Leader Charity Puckett testified that a patron shook produce in the area where the slip and fall occurred, and Mr. Huizar "missed it," therefore failing to remedy the hazard. (ECF No. 17 at 12.) Smith's, in turn, has provided photos from surveillance footage which appear to show several patrons walking through the area after Mr. Huizar left, including one woman who grabbed produce from the wet rack just before Ms. Scalici fell. (ECF No. 24-2 at 11–17.) A juror could therefore reasonably conclude that Mr. Huizar did not fail to remedy the issue because it occurred after he walked through the area.

Ms. Scalici argues that Smith's also had notice under the mode of operation theory, because Smith's practice of frequently spraying produce increases the likelihood that customers will shake water droplets from the produce onto the floor. (ECF No. 17 at 9–10.) Under the mode of operation approach, "the plaintiff satisfies the notice requirement if he establishes that an injury was attributable to a reasonably foreseeable dangerous condition on the owner's premises that is related to the owner's self-service mode of operation." *FGA, Inc. v. Giglio*, 278 P.3d 490, 496–97 (2012) (internal quotation marks and citation omitted). In *FGA*, the Nevada Supreme Court explained that they had implicitly adopted the mode of

operation approach in *Sprague* and declined to extend the approach to a sit-down restaurant. *Id.* at 497. Smith's argues that its method of spraying produce is not a proper activity for applying the mode of operation rule. (ECF No. 24 at 13.) The Court agrees. There is no evidence suggesting that water droplets in the produce area caused a "virtually continuous hazard" analogous to that in *Sprague.* Ms. Scalici attempts to support her proposition by alleging the existence of three prior falls at the Smith's store. (ECF No. 17 at 10.) However, even if these three falls are factually similar to this case, they do not prove a "virtually continuous hazard." *See Sosa Guzman v. Costco Wholesale Corp.,* No. 2:22-CV-02070-CDS-BNW, 2024 WL 4406915, at *3 n.3 (D. Nev. Aug. 23, 2024). Additionally, Ms. Scalici does not provide caselaw showing that Nevada has adopted the mode of operation rule in cases like this.

Because issues of fact remain as to whether Smith's had actual or constructive notice of the hazardous condition, Ms. Scalici is not entitled to summary judgment as to premises liability. Accordingly, the Court denies summary judgment on this issue.

## IV.    CAUSATION AND DAMAGES MOTION

Ms. Scalici next seeks summary judgment as to causation and certain elements of damages, including $28,746 for past medical expenses, $397,958 for future medical expenses, and $48,087 for past wage loss. (ECF No. 18 at 6–7.) Ms. Scalici chiefly contends that because Smith's has not retained an expert to rebut her arguments, she is entitled to summary judgment on causation and past medical specials, future medical specials, and past wage loss. (*See* ECF No. 18.) Smith's counters that it has disputed causation and damages, arguing that because Ms. Scalici's medical records and Dr. Debiparshad's testimony show multiple possible causes of her injuries, a jury must decide if her fall necessitated the specific treatment she received. (ECF No. 25.)

Ms. Scalici relies on *Didier v. Sotolongo,* 441 P.3d 1091 (Nev. 2019), and

*Lord v. State,* 806 P.2d 548 (Nev. 1991), to argue that Smith's must retain an expert to rebut her motion for partial summary judgment on causation and damages. (ECF No. 18.) *Didier* however is unpublished and consequently not binding. *See Sanchez v. Albertson's LLC,* No. 2:19-CV-02017-JAD-DJA, 2022 WL 2982926, at *4 (D. Nev. July 27, 2022). Additionally, *Didier* is distinguishable because causation in that case was previously established as a matter of law. *Lord v. State* is not a negligence case. Instead, it is a criminal case where the Nevada Supreme Court concluded that a medical expert, rather than a detective, should have testified about the cause of the criminal defendant's injuries. *Lord,* 806 P.2d at 551. Nowhere in the case does the Nevada Supreme Court hold that a defendant must provide expert testimony to rebut the plaintiff's expert testimony. Ms. Scalici cites no other relevant authority to support her position that a defendant must provide an expert opinion to rebut a plaintiff's position in a negligence case, once that plaintiff presents an expert opinion about causation and damages.

Additionally, Smith's has pointed to specific facts in Ms. Scalici's medical records and expert testimony showing a genuine issue of fact regarding causation. Ms. Scalici's medical records and Dr. Debiparshad's deposition testimony demonstrate that her injuries are multifactorial, with evidence of a car accident, laminectomy, herniated disk, and stem cell treatment for low back impairment that occurred prior to the accident at Smith's. (ECF Nos. 18-2 at 4, 16; 18-3 at 3; 18-9 at 12–13.) As to future medical specials, Dr. Debiparshad's deposition testimony demonstrates that the transforaminal lumbar interbody fusion was merely one available option if Ms. Scalici's symptoms do not resolve with other treatments. (ECF No. 18-9 at 15.) Regarding past wage loss, Ms. Scalici presents scant evidence concerning past wage loss, and claims lost wages for months that she spent in Portugal. (*See* ECF Nos. 18-8 at 2–6; 25-4.) Given that summary judgment on causation is disfavored and genuine disputes of material

fact remain as to whether the fall at Smith's caused all of Ms. Scalici's injuries, the Court denies her motion on this issue.

The Nevada Supreme Court has consistently recognized that "[g]enerally, quantities of damages are determined by the jury.'" *Albios v. Horizon Communities, Inc.*, 132 P.3d 1022, 1034 (Nev. 2006) (quoting *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 547 (Nev. 2005)). Because genuine disputes as to breach of duty and causation exist, summary judgment on damages is inappropriate. *See Baker v. Wal-Mart Stores, Inc.*, No. 2:19-CV-02218-GMN-VCF, 2021 WL 5114652, at *3 (D. Nev. Sept. 8, 2021). Accordingly, the Court declines to undertake a piecemeal assessment of damages and instead leaves that determination to the jury.

**V.    AFFIRMATIVE DEFENSES MOTION**

Ms. Scalici moves for partial summary judgment on Smith's affirmative defenses, including failure to mitigate and comparative negligence. (ECF No. 16.) Ms. Scalici also moves for partial summary judgment on Smith's affirmative defenses of laches, NRS 11.202, and reservation of the right to amend. (*Id.*) Because Smith's expressly waives its affirmative defenses of laches, NRS 11.202, and reservation of the right to amend, the Court does not address Ms. Scalici's arguments pertaining to these affirmative defenses and deems them waived. (ECF No. 26 at 3.)

In Nevada, "an affirmative defense consists of new facts and arguments that, if true, will defeat a plaintiff's claim, even if all allegations in the complaint are true." *F.D.I.C. v. Johnson*, 35 F. Supp. 3d 1286, 1292 (D. Nev. 2014) (citing *Schettler v. RalRon Capital Corp.*, 275 P.3d 933, 940 (Nev. 2012)).

In its first affirmative defense, Smith's alleges that Ms. Scalici failed to mitigate her damages by not treating when moving to Florida, and when in Portugal. (ECF Nos. 1-1 at 25; 26 at 10–11.) Ms. Scalici argues in response that Smith's has failed to offer evidence to create a genuine dispute of material fact.

(ECF No. 16 at 7–9.)

Under Nevada law, a plaintiff must mitigate damages and "cannot recover for damages which could have been avoided by the exercise of reasonable care." *Automatic Merchandisers, Inc. v. Ward,* 646 P.2d 553, 554 (Nev. 1982). "The burden of proving a failure to mitigate is on the party whose conduct is alleged to have caused the injury." *Sercu v. Lab'y Corp. of Am.,* No. 3:09-CV-0619-LRH-RAM, 2011 WL 540282, at *3 (D. Nev. Feb. 8, 2011).

Viewing all evidence in the light most favorable to Smith's, the Court finds that there are disputed issues of fact as to whether it was reasonable for Ms. Scalici to pause treatment when moving to Florida, and whether Ms. Scalici treated her injury while in Portugal during summer 2022. As a preliminary matter, there is no consensus on what type, frequency, and duration of treatment would be reasonable under the circumstances. Ms. Scalici received medical treatment during the month after her fall at Smith's on April 7, 2022. (*See e.g.,* ECF Nos. 18-2 at 2; 18-5 at 2.) Her medical records show that she did not receive medical treatment between April 29, 2022, and May 9, 2022, while she moved to Florida. (ECF No. 18-7 at 2–4.) Furthermore, while Ms. Scalici asserts that she received medical treatment when visiting Portugal, she has not submitted any evidence of treatment from June 10, 2022, to September 13, 2022. (ECF No. 25-3 at 3–6.) Thus, the Court finds there are disputed issues of material fact precluding summary judgment on Smith's affirmative defense of failure to mitigate damages and denies Ms. Scalici's motion on this affirmative defense.

In Smith's second affirmative defense, it argues that Ms. Scalici was comparatively negligent for failing to observe and avoid the spill. (ECF Nos. 1-1 at 25; 26 at 4–8.) Ms. Scalici argues that she should be granted partial summary judgment on this affirmative defense because Smith's has offered no evidence of her negligence. (ECF No. 16 at 9–10.)

"[C]omparative negligence is negligence on the part of the plaintiff which

contributed to or caused plaintiff's injury." *Sercu*, 2011 WL 540282, at *2. "To establish an affirmative defense of contributory negligence, a defendant must establish that the plaintiff was negligent and that the plaintiff's negligence caused or contributed to plaintiff's injury." *Id.*

Viewing the evidence in the light most favorable to Smith's, the Court finds there are disputed issues of material fact as to whether Ms. Scalici was negligent in not being more careful as she walked. Smith's photos from surveillance footage that captured the fall show several people walking through the area where Ms. Scalici eventually fell. (ECF No. 26 at 4–8.) None of these people slipped or fell. Though this evidence is thin, it is enough to show that there are disputed issues of material fact, and thus summary judgment on Smith's affirmative defense of comparative negligence is denied.

**VI.   CONCLUSION**

IT IS THEREFORE ORDERED that Ms. Scalici's partial motions for summary judgment are DENIED. (ECF Nos. 16, 17, 18.)

IT IS FURTHER ORDERED that Ms. Scalici's motions for submission are DENIED as moot. (ECF Nos. 31, 32, 33.)

DATED THIS 23rd day of January 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE